# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1832, AT WORCESTER.

### PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

## Daniel Comstock *et al. versus* Robert Smith.

A covenant in a deed of land, that the grantor will warrant the land against all persons claiming under him, does not estop him from setting up a title subsequently acquired by him by purchase or otherwise.

This was a writ of entry, in which the demandants counted on their own seisin within thirty years, and a disseisin by the tenant.

The tenant pleaded three pleas. In the third he alleged, that before the demandants had any thing in the demanded premises, one Jason Waters was seised thereof in his demesne as of fee, and while he was so seised, to wit, on October 12, 1818, the tenant bargained with him, by parol, for the purchase of the same ; that then and afterwards, while Waters was so seised, the tenant paid him divers sums in part-execution of that bargain ; that Waters continued so seised of the same premises, and the tenant continued to hold the same under him, until the demandants unjustly and without judgment of law disseised

Waters thereof; that the demandants, while they were so
seised by the disseisin, pretending that they had a good and
lawful right and title, and that they would assure the same pre-
mises to the tenant, in fee, with general warranty, did, on Jan-
uary 27, 1824, by their deed of that date and for the considera-
tion therein expressed and paid by the tenant, grant and sell to
the tenant, in fee, all their right, title and demand in and unto
the same premises, with warranty " against the claims and de-
mands of all persons claiming by or under them and not other-
wise;" that the tenant continued to hold under the deed till
July 14, 1825, when, in order to induce the demandants to re-
fund to him the consideration by him paid, he, by his deed of
that date, " granted, sold and quit-claimed " to the demandants,
in fee, all his " right, title, claim and demand in and unto " the
same premises, and therein covenanted to warrant and defend
the granted and quitclaimed premises to the demandants, in fee,
" against the lawful claims and demands of all persons claiming
by or under him ;" that the demandants thereupon refunded to
him the consideration so by him paid, and no more ; whereupon
he became seised of the same premises by the disseisin of the
demandants, as in their writ set forth ; and being so seised, he
thereafter continued in possession of the same, claiming to hold
the same as tenant to Waters, in pursuance and by virtue of the
parol contract above mentioned, until August 6, 1825, when
Waters, having a lawful right of entry into the same, did, by his
deed of that date, convey the same to the tenant, in fee.

In their replication, the demandants say that the tenant ought
not to be admitted to plead that Waters was seised of the de-
manded premises in fee, and that the tenant was in possession
of the same claiming to hold the same as tenant of Waters, and
by virtue of the parol contract, until the 6th of August, 1825,
when Waters, having a lawful right of entry thereinto, by his
deed of that date conveyed the same to the tenant, in fee, under
which deed the tenant still claims to hold the same premises,
because, they say, that before the date of the writ, to wit, on
July 14, 1825, the tenant, by his deed of that date, (of which
profert is made,) for a valuable consideration therein expressed,
paid by the demandants to the tenant, granted and sold to the
demandants the same premises, in fee, and therein and thereby

Comstock
*v.*
Smith.

covenanted with the demandants, their heirs and assigns, that he would warrant and defend the same to the demandants, their heirs and assigns, against the lawful claims and demands of all persons claiming by or under him ; wherefore they pray judgment if the tenant ought to be admitted, against his own grant, averment and covenant in his deed, to plead that he claims to hold the demanded premises under the deed of Waters.

The tenant, after oyer of his supposed deed, demurs to the replication.

Oct. 5th,
1830.

*Barton* in support of the demurrer. The Court have taken great latitude in the construction of deeds, in order to give effect to the intention of parties ; *Wallis* v. *Wallis*, 4 Mass. R. 135 ; *Pray* v. *Pierce*, 7 Mass. R. 384 ; *Welsh* v. *Foster*, 12 Mass. R. 93 ; and in the case at bar, they will consider the deed from the demandants to the tenant and from the tenant to the demandants, in connexion with each other, and will construe the tenant's deed to be merely a release, upon a restoration by the demandants, of the consideration received for their deed. *King* v. *King*, 7 Mass. R. 496 ; *Clap* v. *Draper*, 4 Mass. R. 266 ; *Stetson* v. *Mass. F. Ins. Co.* ibid. 336. If construed to be a release, it cannot operate as an estoppel, and an interest subsequently acquired by the tenant must stand independent of any preceding transactions. Co. Lit. 265 ; *Quarles* v. *Quarles*, 4 Mass. R. 688 ; *Ellis* v. *Welch*, 6 Mass. R. 246.

But admitting the tenant's deed to be more than a release, still it cannot operate as an estoppel, for it conveys merely the tenant's interest, and not the land itself, and the warranty is limited by the interest which passed. By a deed with general warranty the land itself passes, but a deed of quitclaim conveys only the grantor's interest. Another objection against the supposed estoppel is, that taking the demandants' and the tenant's deeds together, it appears that the tenant has received no valuable consideration from the demandants. *Commonwealth* v. *André*, 3 Pick. 224 ; *Quarles* v. *Quarles*, 4 Mass. R. 680 ; *Callender* v. *Marsh*, 1 Pick. 431 ; *Wilkinson* v. *Scott*, 17 Mass. R. 249.

*J. Davis* and *C. Allen*, *contrà*, said that independently of the replication, the plea contained facts sufficient to prevent the tenant from setting up a title under Waters. Where a grantor

conveys all his " title and interest " with a covenant of warranty, he conveys the land itself. A grantor is not allowed to say that his deed passed no estate. *Jackson* v. *Murray*, 12 Johns. R. 201 ; *Jackson* v. *Bull*, 1 Johns. Cas. 90 ; *Wilkinson* v. *Scott*, 17 Mass. R. 249. The distinction made on the other side, between the tenant's deed, and one with general warranty, is not supported by authority. The form of his deed is such, that it cannot be construed to be a release. He conveys and warrants, and covenants that he has not previously conveyed. The deed is to be taken most strongly against the grantor. The Court will construe an instrument to be a grant or a release, with a view to uphold it, but not to defeat it.

WILDE J. delivered the opinion of the Court. It is a well settled principle of the common law, that if one conveys lands or other real estate, with a general covenant of warranty against all lawful claims and demands, he cannot be allowed to set up against his grantee, or those claiming under him, any title subsequently acquired either by purchase or otherwise. Such new title will enure, by way of estoppel, to the use and benefit of his grantee, his heirs and assigns. This principle is founded in equity and justice, as well as the policy of the law. It is just that a party should not be permitted to hold or recover an estate in violation of his own covenant ; and it is wise policy to repress litigation and to prevent a circuity of actions, when better or equal justice may be administered in a single suit. By such a grant with general warranty nothing passes, nor indeed can possibly pass, excepting the title which the grantor has at the time of the grant ; but he is estopped to set up a title subsequently obtained by him, because, if he should recover against his grantee, the grantee in his turn would be entitled to an action against the grantor, to recover the value of the land. The principle of estoppel therefore not only prevents multiplicity of suits, but is sure to administer strict and exact justice ; whereas, if the grantee were driven to his action to recover the value of the land, exact justice might not be obtained, because the land might possibly not be estimated at its just value. If, however, the grantee were not entitled to recover the value of the land on the grantor's covenant of warranty, then in such a case it is obvious that this species of estoppel would not be applica-

ble. And such appears to be the law in regard to the covenant in question, by which the demandants attempt to estop the tenant to set up or plead the title of Waters. The tenant's covenant is a restricted covenant, and is coextensive with the grant or release. He agrees to warrant the title granted or released, and nothing more. That title only he undertook to assert and defend. To extend the covenant further, would be to reject or do away the restrictive words of it, and to enlarge it to a general covenant of warranty, against the manifest intention of the parties. The tenant, in covenanting to warrant and defend the granted or released premises, must be understood to refer to the estate or title sold and released, and not to the land, because he did not certainly intend to warrant any estate or title not intended to be conveyed. Now if Waters, after the tenant's quitclaim deed, had evicted the demandants, this would have been no breach of the tenant's covenant. · Or if the tenant now held under Waters without having obtained the fee from him, he might pray Waters in aid, and thus defend himself against the title of the demandants, the title of Waters being, as the plea avers, the elder and better title, and this also would be no breach of the tenant's covenant. He did not undertake to convey to the demandants an indefeasible estate, but only his own title, nor did he agree to warrant and defend it against all claims and demands, but only against those derived from himself; by which he must be understood to refer to existing claims or incumbrances, and not to any title which he might afterwards acquire by purchase or otherwise from a stranger. *Ellis* v. *Welch,* 6 Mass. R. 250. There is therefore no reason to be assigned, why the tenant should not purchase the title of Waters. The demandants cannot thereby be prejudiced, nor ought they therefrom to derive any benefit.

It was then contended by the demandants' counsel, that admitting the tenant is not estopped by his covenant of warranty, he is nevertheless estopped by his conveyance, to deny that he had any title in the land at the time of the conveyance. This also is a well established principle of the common law. Co. Lit. 45, 47 ; *Jackson* v. *Murray,* 12 Johns. R. 201 ; *Jackson* v. *Bull,* 1 Johns. Cas. 91 ; *Iseham* v. *Morrice,* Cro. Car. 110. But the tenant, in his plea, does not deny that he had any title

to the land ; on the contrary, he avers that, before the time of his conveyance, he was in possession of the land under Waters, that afterwards the demandants disseised Waters, and being seised by disseisin they conveyed to the tenant all their right and title, with a covenant of warranty, similar to the one contained in his reconveyance to them.    The demandants, in their turn, would be estopped to aver that they had no title in the land, nor is there any such averment in the pleadings.    The tenant, at the time of his reconveyance, might have had a valuable interest in the land by possession and improvements, although Waters had a paramount title.    This interest, whatever it was, passed to the demandants by the tenant's deed, and it was all the title he had to convey or was expected to convey.    If under these circumstances the demandants could now acquire, without any consideration, another title by estoppel, we should be compelled to admit that estoppels are as odious as they are sometimes said to be.    But the doctrine of estoppel aids much in the administration of justice ; it becomes odious only when misunderstood and misapplied.

Nothing can be more just than the doctrine of estoppel urged by the demandants' counsel, when applied to a conveyance with a general covenant of warranty ; but to apply the doctrine to the tenant's restricted conveyance and covenant, would be a manifest perversion of the principle upon which the doctrine is founded.

We are therefore of opinion, that the replication to the third plea in bar is insufficient, and that the tenant is entitled to judgment for his costs.