HOWE *vs.* HARRINGTON and VAN WINKLE.*

1. A deed for land, the legal title to which was not in the grantor at the time of the conveyance, is inoperative at law.

2. Covenants of warranty in a deed executed by an attorney, whose power only authorized him to sell and convey, and contained no authority to covenant, do not bind the grantor. Such deed, as against him, must be considered as a deed of bargain and sale, without covenants, and will not, by estoppel, convey after acquired property. It would, however, convey the equitable title of such grantor, if he had any.

3. If an agent, under a power of attorney, convey land under circumstances that make the conveyance a fraud on his principal, and the purchaser has notice of the facts, the title in his hands will be affected by the fraud, and equity will not aid him in removing defects in his legal title.

*Mr. Boyd* and *Mr. Gregg,* for complainant.

*Mr. Fleming,* for defendants.

THE CHANCELLOR.

This suit, brought by Samuel O. Howe, of New York, against Cornelius Van Winkle and G. H. Harrington and wife, is to compel the defendants to convey to the complainant a tract of land in Hudson city, in this state. This tract had been conveyed by Van Winkle to Harrington, on the nineteenth day of December, 1863, by a deed which the complainant alleges was fraudulent, and designed and executed to defraud him.

The complainant claims title through a deed dated September thirteenth, 1859, made by Cornelius Van Winkle, by William M. Gitt as his attorney, to Hamilton W. Shipman,

by which this lot was conveyed to Shipman. That deed is inoperative at law, because Van Winkle, at that time, had not the legal title to the lot, but acquired it subsequently, in April, 1863, by a conveyance from John M. Cornelison and others, in whom the legal title was until then vested.

The deed to Shipman contained full covenants of warranty, but it was not signed by Van Winkle in person, and the power of attorney under which Gitt executed it, only authorized him to sell and convey, and contained no authority to covenant. The covenants, therefore, did not bind Van Winkle. *Nixon* v. *Hyserott*, 5 *Johns. R.* 58; *Gibson* v. *Colt*, 7 *Ibid.* 390. This deed must, as against Van Winkle, be considered as a deed of bargain and sale, without covenants; and such deed will not, by estoppel, convey after acquired property. *Sparrow* v. *Kingman*, 1 *Comst.* 242; 2 *Smith's Lead. Cas.* [624]; *Demarest* v. *Hopper*, 2 *Zab.* 620, opinion of Justice Carpenter.

If this position is not correct, then the title would, by estoppel, have vested in Van Winkle's grantee upon the conveyance to him; his title at law would be perfect, and this suit could not be maintained.

Yet such deed would convey the equitable title of the grantor, if he had any. But it does not appear from anything in this case, that Van Winkle had any equitable title to these lands. The lot had been devised to him by his grandfather, who, in his will, described it as a lot he got in exchange with Doctor Cornelison. No facts appear in the case to show that this testator, at his death, or Cornelius Van Winkle, at the date of the conveyance to Shipman, had such equitable title to this lot as would entitle him to compel the owners of the legal title to convey it. If, under a parol agreement for exchange, the owners of the legal title were willing to convey to Cornelius Van Winkle, he had an equitable claim under the will of his grandfather, to compel the other devisees under that will, as heirs-at-law of the testator, to convey the lot agreed to be taken in exchange, to John M. Cornelison, and the other owners of the legal title to the lot in question here.

A bill was filed in this court by Cornelius Van Winkle against the heirs of his grandfather, on the allegation that the owners of the legal title to this lot were willing to convey. These owners were not made parties to that suit, and of course no decree was had against them. If they were not, in equity, bound to convey, but willing to do so, either from regard to their promise, or for the consideration that led to the agreement for exchange, then Van Winkle, at the date of the deed to Shipman, had no equitable title to convey, and the deed was a nullity.

The power of attorney under which the deed to Shipman was made, was given by Van Winkle to Gitt, on the twenty-fifth day of November, 1857, just after Van Winkle became of age, and authorized Gitt to receive, recover, and take possession of all his property, real and personal, and sell and dispose of the same, paying Van Winkle one half of the proceeds, and keeping the other half for his expenses and trouble; it was declared to be irrevocable. Such a power is, upon the face of it, inequitable and void of adequate consideration; and without any evidence of the character of the person to whom it was given, or the circumstances and representations under which it was obtained, must warn this court in attempting to give efficacy to anything done under it, and all purchasers taking title through it, to be on the look out for fraud.

By an agreement, dated on the eleventh of June, 1858, between Van Winkle and Gitt, in which it was recited that Gitt was equally interested with Van Winkle in all the property, real and mixed, to which he was entitled in New Jersey, Van Winkle, for $100, advanced by Gitt toward the expenses, agreed with Gitt to perfect his title to the lot in question by proceedings in Chancery, or at law, and when recovered, to convey the same to Gitt; Gitt paying him one half the value of the same, less the $100 advanced, and such other sums as Gitt might expend for such proceedings. The lot was worth at least $1500. This agreement is, in substance, to give Gitt one half of the value for the *loan* of $100; Van Winkle to be at the trouble and expense of recovering his

property. This agreement is clearly so unconscientious on the face of it, and so devoid of all adequate consideration, that a court of equity would never enforce its performance. Besides, it is not claimed that Van Winkle or Harrington has ever been asked to perform it, or that one half the value of the lot, less the $100, has ever been tendered to him. In fact, on the argument, counsel expressly disclaimed any claim to recover under this agreement, and placed his whole case upon the conveyance by virtue of the power.

The conveyance to Shipman was after the agreement of June eleventh, 1858, and after the same was recorded, and purports to convey as well the right of Gitt to the lot as the right of Van Winkle. The right of Gitt was under the agreement, of which Shipman from this deed must be presumed to have notice in fact; the record was notice in law. The deed was after the suit in Chancery was commenced, and before it was terminated. The attempt to sell this property under the power of attorney, after the agreement of June eleventh, while Van Winkle, under that agreement, was attempting to perfect the title, and before it was perfected, was a breach of faith and gross fraud by Gitt, and was equally a fraud on the part of any purchaser having notice of the existence of the agreement, as Shipman must have had.

The same presumption of notice affects all purchasers under him, including the complainant. And were the case free from the difficulty above stated, as to the effect of this deed upon the legal title, and the want of any equitable title for it to operate on, a court of equity would not lend its aid to any one claiming through such a transaction. This view renders it unnecessary to consider the conduct or title of Harrington, or to consider or determine upon the evidence of actual fraud, reaching down to the complainant in this cause.

The bill must be dismissed, with costs.